## BUTTS vs. PERKINS.

In October, 1855, H. being indebted to P. in the sum of $26.50 for a set of tomb-stones, arranged with S., a debtor of his, that S. should pay that sum to P. upon delivery of the stones. But P. being indebted to the plaintiff upon a promissory note dated January 30, 1854, payable one day after date, P. agreed with the plaintiff that the latter might receive from S. the price of the stones, and apply the amount thereof upon the note, and P. thereupon delivered the stones to the plaintiff for S., who had previously consented that the parties might make this arrangement, and had notice that it was made, and assented to it soon after it was made. *Held* that the effect of the transaction was to substitute S. in the place of P. as debtor to the plaintiff, for the price of the stones, and that it operated *in presenti*, as a payment of such price, upon the note.

*Held* also, that the agreement canceled $26.50 of P.'s indebtedness on the note, as of the date of the delivery of the stones, and that the plaintiff should have indorsed that sum on the note, as of that date, although he did not receive the same from S. until April 1, 1856.

And that as the $26.50 ought to have been paid by S. and received by the plaintiff, at the time of the delivery of the stones, the payment of that amount upon the note—so far as the question of the statute of limitations was concerned—should be considered as made and received at that time.

ACTION on a promissory note; defense, a general denial and the statute of limitations. The evidence was uncontradicted. The referee found the following facts and conclusions of law: First. That on the 30th day of January, 1854, the defendant, for value received, executed and delivered to the plaintiff a promissory note, of which the following is a copy:

" $300. One day from date, I promise to pay Harvey Butts, or bearer, three hundred dollars, with interest.

Laurens, Jan. 30, 1854. JOHN F. PERKINS."

Second. That said plaintiff then became, ever since has been, and still is the holder and owner of said note.

Third. That an indorsement was placed upon said note by the plaintiff, on the 1st day of April, 1856, of $26.50, of which the following is a copy, to wit:

" Received, April 1, 1856, of Samuel Straight, twenty-six dollars and fifty cents, to apply on interest on the within note."

Fourth. That said indorsement was placed upon said note under the following circumstances and agreement, to wit: About the month of April, 1855, one Abel Harrington had made an agreement with the defendant by which the defendant was to manufacture a set of tomb-stones for the grave of Harrington's deceased wife ; for which Harrington was to pay the defendant $26.50 ; the stones to be paid for when taken away from the defendant's shop, which was in Oneonta, Otsego county ; that the defendant manufactured said stones and had them ready for delivery at his shop in the month of October, 1855 ; that previous to said last date, Harrington had sold some cattle to Straight, and that an agreement was made between Harrington and Straight, by which Straight was to pay the defendant the price of said tomb-stones for Harrington, and Harrington was to credit Straight the amount thereof, as a payment upon said demand against Straight for the cattle ; that the plaintiff and Straight both resided in Laurens in said county ; that in October, 1855, the plaintiff was about going to Oneonta, and Straight informed him that there was a set of tomb-stones at the defendant's shop for the grave of Harrington's deceased wife, and that by agreement between him and Harrington, he, Straight, was to pay for them ; and Straight requested the plaintiff to call at the defendant's shop and bring them up. An agreement was then made between the plaintiff and Straight, by which, if the defendant would consent, the price of said stones was to be applied on the said note of the plaintiff, and Straight was to pay the price thereof to the plaintiff instead of paying it to the defendant ; that the plaintiff, in said month of October, 1855, called at the defendant's shop in Oneonta and took said stones into his wagon, and the plaintiff and defendant made an agreement that the price of said stones, $26.50, should be applied on the said note, and that Straight might pay said price to the plaintiff instead of paying to the defendant ; that when Straight paid the same to the plaintiff the plaintiff was to indorse it on the note, and that the plaintiff was to notify

Butts *v.* Perkins.

Straight that he was to pay the said price to him. That the plaintiff took said stones to Straight and notified him of the above agreement between the plaintiff and defendant, on the same day, or within a day or two after making said agreement; that Straight then owed the plaintiff some other demands; that the plaintiff did not request payment for the stones; that Straight did not request the plaintiff to wait or extend the time of payment, and that the price of said stones so remained until the 1st day of April, 1856, on which day Straight paid the price of them, $26.50, to the plaintiff, who immediately and on the same day indorsed the same on the note; that the defendant was not present when said indorsement was made, and knew nothing of it, and that he had nothing to do with the demand for the stones after October, 1855, and that he never called upon Straight or Harrington for the price of said stones.

Fifth. That the price of said stones was due in October, 1855, when they were taken from the defendant's shop by the plaintiff.

Sixth. That this action was commenced on the 31st day of March, 1862.

Seventh. That said note had been due more than six years before this action was commenced.

As matter of law, the referee found, *First.* That the $26.50, the price of the stones, should have been applied on the note in October, 1855, when they were taken from the defendant, the price being due then; that the action should have been brought within six years from that time; that the payment by Straight and the indorsement by the plaintiff, made on the 1st day of April, 1856, did not take the note out of the operation of the provisions of the code of procedure concerning the time of commencing civil actions.

*Second.* That this note was, before the commencement of this action, barred by the limitations of the above statute, and that the plaintiff could not recover in this action.

*Third* That the defendant was entitled to judgment for

costs; and judgment was ordered accordingly. To all of which the defendants excepted.

After judgment was entered in favor of the defendant for $63.46 costs, the plaintiff appealed therefrom to the general term of the court.

*L. L. Bundy*, for the plaintiff, cited *Read* v. *Hurd*, (7 *Wend.* 408;) *Roseboom* v. *Billington*, (17 *John.* 184;) *Winchell* v. *Hicks*, (18 *N. Y. Rep.* 558;) *Barger* v. *Durvin*, (22 *Barb.* 68;) *Allen* v. *Webster*, (15 *Wend.* 284;) *Stafford* v. *Richardson*, (*Id.* 302;) *Shoemaker* v. *Benedict*, (1 *Ker.* 185.)

*Sturges & Countryman*, for the defendant, cited *Angell on Limitations*, 250, § 241; *Roseboom* v. *Billington*, (17 *John.* 182;) *Stafford* v. *Richardson*, (15 *Wend.* 302; *Id.* 306, 7;) *Shoemaker* v. *Benedict*, (1 *Ker.* 183;) *Van Keuren* v. *Parmelee*, (2 *N. Y. Rep.* 523;) *Dunham* v. *Dodge*, (10 *Barb.* 566;) *Winchell* v. *Hicks*, (18 *N. Y. Rep.* 558;) *Read* v. *Hurd*, (7 *Wend.* 408;) *Pickett* v. *King*, (34 *Barb.* 193;) *Davis* v. *Spencer*, (24 *N. Y. Rep.* 386;) *Gardiner* v. *Callender*, (12 *Pick.* 374.)

*By the Court*, BALCOM, J. Straight was to pay the defendant $26.50 for the tomb-stones upon delivery at his shop. But as the defendant was indebted to the plaintiff upon the note in question, he agreed with the latter that he might receive pay of Straight for the stones, and apply the amount thereof upon the note, and the defendant then delivered the stones to the plaintiff. Straight had previously consented that the parties might make this agreement, and had notice that it was made, and assented to it when the plaintiff took the stones to him, which was within a day or two after such agreement was made. It bound him as well as the parties to the action, for Harrington had paid him for the stones. All this occurred in October, 1855, which was more than six years prior to the time the action was commenced.

Butts *v.* Perkins.

The effect of the transaction was to substitute Straight in place of the defendant, as debtor to the plaintiff, for the price of the stones, and it operated *in presenti* as a payment of such price upon the note. (*See Davis* v. *Spencer,* 24 *N. Y. Rep.* 386; *Gardner* v. *Callender,* 12 *Pick.* 374; *Eaves* v. *Henderson,* 17 *Wend.* 190; *Read* v. *Hurd,* 7 *id.* 408.)

The plaintiff could have maintained an action against Straight for the price of the stones. (*See Barker* v. *Bucklin,* 2 *Denio,* 45; 4 *id.* 97; *Lawrence* v. *Fox,* 20 *N. Y. Rep.* 268.)

He could not have avoided applying such price upon the note, even if he had failed to collect it of Straight.

It was immaterial to the defendant whether the plaintiff could or should collect the price of the stones of Straight. He parted with the possession of the stones in part payment of his note, and as he delivered them to the plaintiff upon a new agreement with him, he parted with all right of action therefor against Straight or Harrington.

There was a sufficient consideration for this agreement, moving from the defendant; for the presumption is that he would not have delivered the stones to Straight or Harrington without being paid down for them.

Suppose the plaintiff had sued the defendant upon the note the next day after the stones were delivered, he could not have avoided allowing the price of the stones as a payment upon the note on the ground that Straight had not paid the same to him. He would have been told that the price of the stones was due from Straight to him and not to the defendant.

Straight was not in any sense the agent of the defendant in paying for the stones to the plaintiff; nor was the latter in any sense his agent in collecting such pay of Straight. Both acted as principals, and were principals in the transaction, after the agreement was made that entitled the plaintiff to the price of the stones from Straight, and bound the latter to pay it to the former.

The agreement canceled $26.50 of the defendant's indebtedness on the note as of the date of the delivery of the stones,

and the plaintiff should have indorsed the $26.50 on the note as of that date, though he did not receive the same of Straight until the first day of April in the following year. (*See authorities cited, supra.*) ·

No reason has been assigned for the delay of the plaintiff in collecting the price of the stones of Straight; and for aught that the case shows, there was no good reason for such delay. Straight was able to pay for the stones, and he did not request the plaintiff to wait or extend the time of payment. Hence if there had not been such a consideration moving from the defendant, as to shift the risk from him to the plaintiff, of Straight paying for the stones, it would have been the duty of the plaintiff to collect pay for the stones of Straight at the time he delivered them, or to have refused to deliver them unless paid therefor; and in that case the reasoning of Sutherland, J. in *Read* v. *Hurd*, (*supra*,) would apply. He there said : " It does not appear whether the price of the steer was to have been paid immediately by Skiff, or whether the sale was upon credit. If no credit was given, it may admit of very serious question whether, as between the plaintiff and the defendant, the payment must not be considered (so far as the question of the statute of limitations is concerned) as made when, by the terms of the agreement between Skiff and Read, it ought to have been made. If not, then it was in the power of Skiff at any period, no matter how remote, to have revived this note, by a payment to the plaintiff."

If this reasoning is sound, and we continue the supposition that the risk of Straight paying for the stones remained with the defendant, it is clear that it was the plaintiff's duty to require Straight to pay for the stones when he delivered them to him, or to Harrington for him; and as the price ought then to have been paid by Straight and received by the plaintiff, it should be considered (so far as the statute of limitations is concerned) as made and received at that time. If not, then it was in the power of Straight to revive the note

The People *v.* McKinney.

in question, at any time, however remote, by the payment of the price of the stones to the plaintiff.

My conclusion is that the defendant cannot be regarded as consenting to the indorsement or application upon the note of the $26.50 as of the 1st day of April, 1856, when the same was paid by Straight to the plaintiff; and that such sum must be deemed to have been paid and should be applied upon the note as paid by the defendant in October, 1855, which was more than six years prior to the time the action was commenced.

The judgment should therefore be affirmed, with costs.

.Decision accordingly.

[BROOME GENERAL TERM, May 10, 1864. *Campbell, Parker, Mason* and *Balcom*, Justices.]