[Decided October 5, 1892.]

## PERRY HOYT v. JAMES F. CLARKSON.

[S. C. 31 Pac. Rep. 198.]

1. EQUITY—SETTLED ACCOUNTS—MISTAKE—PROOF.—When a settlement of accounts has been deliberately made and a note voluntarily given for an ascertained balance, a court of equity will not re-examine such accounts except on precise allegations of error or mistake and on clear and satisfactory proof of the same.

2. SETTLED ACCOUNTS—PROMISSORY NOTE—PRESUMPTION.—The giving of a promissory note is *prima facie* evidence of an accounting and settlement of all demands between the parties to that date, and the note is presumed to express the ascertained balance. *Matasche* v. *Hughes*, 7 Or. 39, approved and followed.

3. SETTLED ACCOUNTS—EVIDENCE—PLEADING FRAUD OR MISTAKE.—It is a general rule that settled accounts will not be opened on mere conflicting evidence, and if opened only errors particularly and fully alleged will be considered. Fraud or error must be precisely pleaded, so that issue may be joined and the adversary may be prepared. *Fleischner* v. *Kubli*, 20 Or. 328 (25 Pac. Rep. 1086) approved and followed.

Lake County: LIONEL R. WEBSTER, Judge.

Plaintiff appeals. Affirmed.

*C. A. Cogswell,* and *W. A. Wilshire,* for Appellant.

*W. R. Willis, E. D. Sperry,* and *H. K. Hanna,* for Respondent.

LORD, C. J.—This is a suit in equity, brought by the plaintiff against the defendant as his agent, for an accounting of alleged business transactions covering a period of about eight years. The facts show that in October, 1880, the plaintiff and defendant entered into an agreement whereby the defendant was to take full charge and control of plaintiff's stock, consisting of horses, mules, and cattle, and of certain ranches then in

possession of the plaintiff, it being understood that the defendant as such agent was to sell the increase of said stock and pay the expenses of carrying on the business out of the proceeds of the sale and other money furnished by the plaintiff. For his services in conducting and managing the business, the defendant was to receive the sum of forty dollars per month, and, as the defendant claims, to have the privilege of looking after his own horses, and of buying and selling horses.

The plaintiff in his complaint, after alleging the facts out of which the business relation existed between them, alleged that "The defendant had fraudulently, and in violation of his said trust, spent large sums of money belonging to this plaintiff for matters and things personal to himself and entirely foreign to the necessary management and care of plaintiff's business ; and that he had from time to time sold and otherwise disposed of a large number of plaintiff's said horses, mules, and cattle, and rendered no account therefor ; that he has demanded of the defendant an accounting of all his transactions with reference to plaintiff's said property and business, and demanded of him to be allowed to examine all books of account kept by him in relation to said business since his employment, but that the defendant refused to render any account or to permit plaintiff to examine any of his said accounts."

In defense, the defendant pleaded full and complete settlement of all business transactions between the plaintiff and defendant down to the twenty-fifth of May, 1888, leaving an unsettled account only from the date last mentioned to the fifteenth day of December, 1888, and the execution by plaintiff of his promissory note for the sum of one thousand nine hundred and sixty-nine dollars, the amount found due on said settlement ; and also alleged that plaintiff had wrongfully possessed himself of all books and accounts kept and owned by defendant showing said business transactions and settlements, and thereby

prevented the defendant from rendering an account of the same.

Upon the issues thus presented by the pleadings, the cause went to trial, and the first issue tried and determined by the court was that of the settlement of May 25, 1888. Upon that issue the court held that "the defendant would not be required to account to and with the plaintiff in reference to any matter which occurred prior to the twenty-fifth day of May, 1888, but that plaintiff might show any errors or omissions in said settlement and any proper charges against the defendant prior to said date."

The trial court tried the case upon the theory that the defendant having pleaded a settlement, the burden rested upon him to establish it by a preponderance of the evidence. Entertaining this view, the trial court permitted the plaintiff to put the defendant on the stand, and to interrogate him fully as to all business transactions between the parties from the beginning of the defendant's agency, without pointing out or claiming any particular matter or item had been left out of said settlement by mistake, fraud, or otherwise. As the plaintiff admitted the execution of the note for the sum of one thousand nine hundred and sixty-nine dollars, the amount found due on a full settlement as alleged, the counsel for the defendant insist that the burden rested on the plaintiff to overcome this *prima facie* evidence of a settlement by a preponderance of evidence. While, therefore, the counsel for the defendant claims that the court was correct in finding that there had been a settlement between the parties on the twenty-fifth day of May, 1888, he thinks the court erred after so finding, in allowing the defendant to be interrogated as a witness in reference to the matters as above stated. He further insists that the pleadings were not broad enough to warrant such an inquiry.

Without doubting the right of a party to inquire into and set aside a settlement for fraud or to correct mistakes, he maintains that before this can be done the pleader must set out the facts constituting the fraud, or spe-

cifically point out the items claimed to have been omitted or included by mistake.

As the plaintiff in his pleadings nowhere claims any fraud or mistake in the settlement, he contends that after the trial court passed upon the question of settlement, it should have refused to allow the evidence in reference to the previous business transactions of the parties, but should have dismissed the plaintiff's bill unless he obtained leave and amended his complaint. The point the plaintiff sought to make was that there had been no full and complete settlement of the business transactions between the defendant and himself, or in fact any settlement whatever except for the personal wages of the defendant, and that the promissory note executed by him was given therefor and for no other consideration. The court though found otherwise,—that there had been a full and complete settlement between them,—and determined that the defendant was not required to account to the plaintiff for any matter which occurred prior to such settlement, but that the plaintiff might show any errors or omissions and proper charges against the defendant prior thereto. While the trial court was satisfied that the settlement did include their other business during the period stated, other than wages as claimed by the plaintiff, it was not fully satisfied from the evidence that some error or mistake might not have occurred in the settlement; and to avoid any injustice, in view of the relation of the parties, it concluded to permit the plaintiff to offer proof of the same. This was opening the account for examination and permitting the plaintiff to proceed to prove errors or mistakes, if he could, without specifying in what such errors or mistakes consisted, or any allegations in respect thereto.

While it is true that a court of equity will more readily open and examine a settled account between parties standing in fiduciary relation than others, and even sometimes entirely disregard such settlement when such parties are not on an equal footing in settling such account, yet when

a settlement of accounts has been deliberately made and a note voluntarily given for an' ascertained balance, it will not reëxamine such accounts and grant relief except on precise allegations of such errors or mistakes, and clear and satisfactory proof of the same. In *Matasche* v. *Hughes*, 7 Or. 41, the court says: "The giving of a promissory note is *prima facie* evidence of an accounting and settlement between the parties of all demands between them up to the time of the execution of the note. The presumption is only *prima facie*, and is liable to be explained, but until explained it is to be taken as true, and affords sufficient evidence that at its date the maker owed the payee the amount named in the note." The presumption is in favor of the correctness of the settlement, and that the note given for the balance ascertained on such settlement expresses the truth. Hence, the general rule that a settled account will not be opened on mere conflicting evidence, and that when opened, errors or omissions not alleged will not be considered, though there may be some evidence tending to prove them. In such case the party claiming that there were any errors or mistakes must allege them fully and precisely, so as to inform his adversary, and so that issue may be joined upon them: *Fleischner* v. *Kubli*, 20 Or. 328 (25 Pac. Rep. 1008). When, therefore, the court below found that there had been a settlement between the parties and opened it to reëxamination for the purpose of showing errors or mistakes, it ought to have required the plaintiff to allege them, otherwise the defendant was uninformed as to what matter the plaintiff relied upon— whether it was the mistake of some item or a false charge or other error.

But waiving this point, and recurring to the result of our examination of the case, we agree with the trial court that the evidence shows a settlement, and that such settlement and the note given for the balance included all their business transactions, and was not confined solely to the payment of the wages of the defendant; but at the

same time we think the evidence was slight and merely conflicting, upon which the court opened the account set tled and permitted proof of errors or mistakes. The liberality of the court in this regard was no doubt much influenced by the relation of the parties as principal and agent; but in view of the nature of the evidence and the circumstances under which the books of account were taken by the plaintiff out of the possession of the defendant in his absence, and the mutilation of the same by some one, there certainly was slight ground for such liberality of jurisdiction; but before exercising it the court ought to have required precise allegations of the fraud or errors. Still we do not think any injustice resulted to the defendant from the action of the trial court.

The record discloses that the court tried the case with much care and thoroughness and reached the result that there were no errors or mistakes, or any evidence sufficient to sustain a decree upon any transaction prior to the settlement of the twenty-fifth of May, 1888. An attentive examination of the evidence has satisfied us of the correctness of this result. It would encumber the record and serve no useful purpose to set out the evidence upon which this conclusion is founded. But one instance may be referred to which seems to have been singled out by the plaintiff, as indicating an omission by the defendant to account to him for the sale of certain mules. This item refers to the sale of certain mules to a Mr. Shearer in 1883. The wife of the plaintiff testified that she never heard of the sale of such mules until 1889, and the plaintiff testifies that he first remembers of hearing of it in 1889, but on cross-examination he admits that he might have heard of the sale in 1883 and forgotten it. It may be said that the evidence shows that the plaintiff's memory is not good, and he admits as much. The record, however, discloses that the plaintiff and defendant had a settlement of all their business transactions in 1883, including all sales of stock, and that a balance was ascer-

tained to be due the defendant, for which the plaintiff gave his written promise. But an examination of the evidence in reference to this transaction shows that the defendant, without the least reserve, before either of the parties had testified directly in relation to such sale of mules, testified that he had sold to a Mr. Shearer twelve head of mules, and that he wrote and informed the plaintiff of it, and was quite positive that the plaintiff had written to him in reply, and that he had paid Mr. Frankl $750 of the money received on the sale. Mr. Frankl, who was a merchant, testified that the defendant had paid to him on account of the plaintiff $750, money received on the sale of the mules. To corroborate his testimony, the plaintiff testified that he had a letter from the defendant in which he states that he did not sell his mules to Mr. Shearer, but the letter introduced, written by the defend ant, only states that he did not sell any mules to a Mr. Stephens.

No one, we think, can read all the evidence in respect to this matter and reach any other conclusion than that the proceeds of such sale were properly accounted for. When it is considered that the sale of such mules was open and notorious ; that it occurred several years before ; that it was known to the business men of the community, and that the merchant with whom the plaintiff had an account received $750 from the defendant on such sale and accounted to the plaintiff for it ; that the parties had a settlement in that year, that the memory of the plaintiff stands self confessed as not good and reliable, and that the defendant was deprived of a part of his books of account and other papers which he claims would have exhibited the whole transaction, it is not possible to reach any other conclusion than that the transaction was properly accounted for at the time.

We think, therefore, in this aspect of the case, the result reached by the court was correct, namely, that the evidence is insufficient to show any error or omission in the settlement, and consequently to sustain a decree

based upon any transaction prior to the settlement of the twenty-fifth of May, 1888. This narrows the case to the consideration of the unsettled business between the twenty fifth of May, 1888, and the fifteenth of December, 1888. The items of account during this period are few, and the account taken by the court and the result reached by it is not much contested. We are not able to discover any error in the account as taken, and shall affirm the decree for the balance found to be due to the plaintiff, but shall award costs and disbursements in this court to defendant.